**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**CENTRAL DIVISION**

| | | |
|---|---|---|
| In re:<br><br>DENIS P. LEMIEUX AND ROBIN M. LEMIEUX<br><br>        Debtors<br><br>DENIS P. LEMIEUX AND ROBIN M. LEMIEUX<br><br>        Plaintiffs<br><br>v.<br><br>AMERICA'S SERVICING COMPANY AND WELLS FARGO HOME MORTGAGE<br><br>        Defendants | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Chapter 7<br>Case No. 12-40104-MSH<br><br><br><br><br><br>Adversary Proceeding<br>No. 14-04042 |

**MEMORANDUM OF DECISION REGARDING DEFENDANTS' MOTION TO DISMISS**

This matter arises from an adversary proceeding brought by the debtors in the main case, Denis P. Lemieux and Robin M. Lemieux, in which the Lemieuxs seek a judgment of contempt, money damages and attorneys' fees against America's Servicing Company ("ASC") and Wells Fargo Home Mortgage for violating the discharge injunction codified in § 524(a)(2) of the Bankruptcy Code. The Lemieuxs allege that various post-discharge communications sent by ASC and Wells Fargo violated § 524(a)(2) because they were actions to collect a debt. ASC and Wells Fargo have moved to dismiss the Lemieuxs' complaint under Fed. R. Civ. P. 12(b)(6), made applicable to this proceeding by Fed. R. Bankr. P. 7012, for failure to state a claim upon

1

which relief can be granted. For the reasons discussed below, the motion to dismiss will be allowed, in part.

I.  Facts

Denis and Robin Lemieux filed a joint petition for relief under chapter 7 of the Bankruptcy Code (which is title 11 of the United States Code) on January 12, 2012. In the chapter 7 individual debtor's statement of intention and on schedule A of the schedules of assets and liabilities accompanying their petition, the Lemieuxs indicated their intention to surrender 72 Hill Road in Groton, Massachusetts, which was their primary residence at the time of filing. Both the statement of intention and schedule D of the schedules list ASC as a creditor[1] with a mortgage or security interest in the Groton property. According to the complaint, ASC is a division of Wells Fargo Home Mortgage.

On April 19, 2012, the Lemieuxs received their bankruptcy discharges pursuant to Bankruptcy Code § 727. Two months later, on June 18, 2012, HSBC Bank USA, National Association, as Trustee for Deutsche Alt-A Securities Mortgage Loan Trust, Series 2006-AR4,[2] holder of the mortgage on the Groton property, obtained relief from the automatic stay under Bankruptcy Code § 362 to exercise its rights with respect to the property.

According to the complaint, the Lemieuxs vacated the Groton property in July 2012. The Lemieuxs allege that, sometime after July 2012, they began receiving written communications from ASC and Wells Fargo. The communications were addressed to them at 248 Mansur Street,

---

[1] It appears that ASC was on the bankruptcy petition date and continues to be the servicer of the mortgage loan.

[2] It is assumed that ASC was the servicer of the mortgage loan when HSBC filed its motion for relief from stay.

Lowell, Massachusetts, which appears to be the residence of Mr. Lemieux's mother. All of the documents included in the written communications from ASC and Wells Fargo are dated as of 2014 and are addressed to Denis P. Lemieux and Robin M. Lemieux. These documents consisted of: (i) monthly mortgage loan statements, (ii) one notice of change in interest rate and (iii) documents and letters regarding hazard insurance coverage. The Lemieuxs concede in their complaint that they brought the written communications to the attention of their bankruptcy attorney, who repeatedly assured them of the "efficacy" of the discharge injunction, which I take to mean he told them that ASC and Wells Fargo could not legally pursue the Lemieuxs personally for payment of the mortgage debt. Nevertheless, the Lemieuxs claim they feared that ASC and Wells Fargo "have so much financial power that [they] may eventually be compelled to pay the discharged debt." In any event, the Lemieuxs claim the act of sending the written communications itself constitutes a violation of the discharge injunction.

II.     Positions of the Parties

The Lemieuxs allege that the various post-discharge communications sent by ASC and Wells Fargo were actions to collect a debt in violation of § 524(a)(2) of the Bankruptcy Code. They request that the court invoke its authority under Bankruptcy Code § 105 to hold ASC and Wells Fargo in contempt and award them money damages and attorneys' fees.

ASC and Wells Fargo have moved to dismiss the Lemieuxs' complaint under Fed. R. Civ. P. 12(b)(6), for failure to state a claim upon which relief can be granted. They argue that the Lemieuxs have no claim because there is no private right of action under § 524 and that a debtor's only recourse in situations like this is to file a motion in the bankruptcy main case seeking to have the offending creditor held in contempt. On the merits, ASC and Wells Fargo

3

argue that their written correspondence, consisting of "non-collection communications containing a 'for informational purposes' disclaimer sent in connection with a secured mortgage that has not been discharged," is permissible for a variety of reasons. First, they assert that the communications fall within the exception to the discharge injunction contained in Bankruptcy Code § 524(j). Second, they suggest that the written communications did not violate the discharge injunction because Wells Fargo retained a continuing claim in the form of a mortgage on the Groton property unaffected by the Lemieuxs' bankruptcy discharge. Third, ASC and Wells Fargo stress that the communications did not demand that the Lemieuxs pay any debt. Finally, they point out that, despite having surrendered and in fact abandoned the Groton property, the Lemieuxs, as owners, retain continuing responsibilities with respect to the property.

III. Discussion

For the Lemieuxs' complaint to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), it must contain sufficient facts, accepted as true and read in the light most favorable to the Lemieuxs, to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009); *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *Rederford v. U.S. Airways, Inc.,* 589 F.3d 30, 35 (1st Cir. 2009). The decision is not "whether a plaintiff will ultimately prevail[,] but whether the claimant is entitled to offer evidence to support [his] claims." *Romano v. Defusco (In re Defusco)*, 500 B.R. 664, 668 (Bankr. D. Mass 2013) (quoting *Gilbert v. Essex Group, Inc.,* 930 F. Supp. 683, 686 (D.N.H. 1993)).

Section 524(a)(2) of the Bankruptcy Code provides that a discharge "operates as an injunction against . . . an act, to collect, recover or offset any [discharged] debt as a personal liability of the debtor . . . ." This injunction, which is to be applied broadly, embodies the fresh

4

start policy of the Bankruptcy Code, by which honest but unfortunate debtors are relieved of personal liability for their discharged debts. *See Canning v. Beneficial Maine, Inc. (In re Canning)*, 706 F.3d 64, 69 (1st Cir. 2013).

A bankruptcy court has the power under § 105 of the Bankruptcy Code to provide relief when a creditor violates § 524. *See id.*; *Bessette v. Avco Fin. Servs., Inc.*, 230 F.3d 439, 444–45 (1st Cir. 2000) ([I]t is clear . . . that a bankruptcy court is authorized to invoke § 105 to enforce the discharge injunction imposed by § 524 and order damages . . . if the merits so require."); *Duby v. U.S. (In re Duby)*, 451 B.R. 664, 670 (B.A.P. 1st Cir. 2011); *Young v. Safe Home Sec., Inc. (In re Young)*, No. 10-13269, 2014 Bankr. LEXIS 1457, at *11 (Bankr. D. Mass. Apr. 8, 2014) ("[A] bankruptcy court may use its contempt power to order monetary relief in the form of actual damages and attorney's fees when a creditor has violated the discharge injunction."). In light of the acknowledged power of the bankruptcy court to vindicate the discharge injunction, it matters not that the Lemieuxs sought to invoke the court's power by filing an adversary proceeding rather than a motion under § 105. The United States Court of Appeals for the First Circuit considered this issue in *Bessette v. Avco Financial Services, Inc.*, 230 F.3d 439, 444–45 (1st Cir. 2000), concluding:

> Despite the appellee's suggestion to the contrary, under a generous reading of the Complaint, the appellant's allegations of violations of § 362 and § 524 and requests for appropriate relief were sufficient to put the appellee on notice of the grounds for the complaint, and that is the proper focus of our review. Although the possibility of relief for the alleged violations through § 105 was not specifically plead in the form of a motion for contempt, "it is not fatal to a complaint that a legal theory has been mischaracterized or that the precise language invoking jurisdiction has not been used." Moreover, both parties briefed the issue of relief under § 105 before this Court and below. Thus, the appellee will not be unduly prejudiced.

*Bessette*, 230 F.3d at 446.

Thus, although relief may be sought in a motion for contempt filed in the main case, a bankruptcy court may exercise its § 105 power in an adversary proceeding. *See id.*; *Duby*, 451 B.R. at 670; *Alley v. Saxon Mort. Servs. (In re Alley)*, No. 09-21500, 2014 Bankr. LEXIS 2843, at *13 (Bankr. D. Me. June 30, 2014). *Contra Laudani v. Wells Fargo, N.A. (In re Laudani)*, 506 B.R. 19, 28 (Bankr. D. Mass. 2014) (holding that a debtor must seek relief for a violation of the discharge injunction by filing a motion for contempt in the main case and not through an adversary proceeding). To dismiss the Lemieuxs' complaint because they chose to address this matter in an adversary proceeding "would be to elevate form over substance." *Alley*, 2014 Bankr. LEXIS 2843, at *12 (citing *Motichko v. Premium Asset Recovery Corp. (In re Motichko)*, 395 B.R. 25, 33 (Bankr. N.D. Ohio 2008). Thus, the first argument offered by ASC and Wells Fargo in support of their motion to dismiss the Lemieuxs' complaint is unsustainable. The Lemieuxs' complaint for contempt can properly be heard in this adversary proceeding.

The fundamental substantive question to be considered here is whether the Lemieuxs have stated a plausible claim that ASC and Wells Fargo violated the § 524(a)(2) discharge injunction by acting to collect a debt. To arrive at an answer, I will consider in turn each of the three types of written communications about which the Lemieuxs complain—the monthly statements, the notice of change in interest rate and the insurance coverage documents.

The first set of written communications, the monthly statements, follow an identical format. Each of the monthly statements provides: "<u>PLEASE NOTE: If you are presently seeking relief (or have previously been granted relief) under the United States Bankruptcy Code, this statement is being sent to you for informational purposes only</u>" (emphasis in original). Disclaimer language on the right side of each statement under the heading "Important messages"

6

states that "This statement is for informational purposes only. Our records indicate that your loan is subject to bankruptcy. The attached coupon reflects the calendar due date, not the contractual due date of the bankruptcy case. If you have any questions regarding your loan, please contact your bankruptcy attorney or our office."

Each monthly statement includes a financial summary section that lists amounts for currently monthly payment, unpaid payment, late charge and total payment, above a section describing activity since the last statement. ASC provides a detachable coupon at the bottom of each monthly statement. Each coupon includes blank lines for the monthly payment amount, additional principal, late charges, other charges and additional escrow. The coupons also include the following language: "<u>If you are currently a party in a bankruptcy case and you choose to make a voluntary payment, detach and return the remittance coupon with your payment</u>" (emphasis in original).

These monthly statements of which the Lemieuxs complain share certain qualities with the monthly bills they had been receiving from ASC prior to filing bankruptcy.[3] Both types of statements include (i) a financial summary section indicating dollar amounts for such items as principal, interest, and/or escrow, current monthly payment, unpaid late charges and total payment, (ii) a section itemizing activity since the last statement and (iii) a detachable coupon with blank lines that a borrower might fill in to indicate a monthly payment amount, additional principal, late charges, other charges and additional escrow.

---

[3] This conclusion is based on a review of an agreed sample prepetition mortgage statement filed jointly by the Lemieuxs, ASC and Wells Fargo.

Despite these similarities, the differences between the prepetition bills and the post-discharge monthly statements are dramatic. Unlike the prepetition bills, the monthly statements include three disclaimers referencing bankruptcy. The first disclaimer, at the top of the page, states: "PLEASE NOTE: If you are presently seeking relief or have previously been granted relief under the United States Bankruptcy Code, this statement is being sent to you for informational purposes only" (emphasis in original). The second disclaimer provides, under the "Important messages" heading, that "This statement is for informational purposes only. Our records indicate that your loan is subject to bankruptcy. The attached coupon reflects the calendar due date, not the contractual due date of the bankruptcy case. If you have any questions regarding your loan, please contact your bankruptcy attorney or our office." Finally, the disclaimer on the payment coupon states that "If you are currently a party in a bankruptcy case and you choose to make a voluntary payment, detach and return the remittance coupon with your payment" (emphasis in original). In all, bankruptcy is referenced six times in each monthly statement and approximately one hundred words are used to convey to the Lemieuxs that the statements are being sent for informational purposes. Even a hypothetical unsophisticated consumer should understand after reading these disclaimers that the monthly statements are not demands for payment. *See In re Nordlund*, 494 B.R. 507, 517 (Bankr. E.D. Cal. 2011) ("[E]ven though the statements contain outstanding payment amounts, payment due dates, payment instructions, and include a payment coupon, the language in each statement indicates that they are not an attempt to collect a discharged debt."); *cf. Pollard v. Law Office of Mandy L. Spaulding*, No. 13-2478, 2014 U.S. App. LEXIS 17345, at *1 (1st Cir. Sept. 8, 2014) (explaining that the court would view a collection letter from "the perspective of the hypothetical

8

unsophisticated consumer" to determine whether it violated the Fair Debt Collection Practices Act).

It is also useful to identify what is *not* in the monthly statements as compared to the prepetition bills. The monthly statements omit the word "due," a word that indicates an attempt to collect a debt. This omission, bolstered by the detachable coupon's reminder that "a party in a bankruptcy . . . [has the choice] to make a voluntary payment" convinces me that ASC and Wells Fargo's sending the Lemieuxs monthly statements did not amount to an act to collect a debt in violation § 524(a)(2).

The Lemieuxs also complain about a two-page document from ASC and Wells Fargo, dated February 7, 2014, notifying them of changes in their mortgage loan interest rate. The notice informs the Lemieuxs that the interest rate on their adjustable-rate mortgage loan would change on April 1, 2014, and could change every six months thereafter. The notice includes disclosures about interest rate calculations, rate limits and payments, and the lack of a prepayment penalty. The second page of the notice states that it "is an attempt to collect a debt . . . . However, if you have received a discharge of this debt in bankruptcy or are currently in a bankruptcy case, this notice is not intended as an attempt to collect a debt, and we have a security interest in the property and will only exercise our rights as against the property."

The notice makes no demand for payment, does not reference any amounts due and provides no other indication that it is an attempt to collect a debt. Rather, it contains disclosures related to the interest rate on the Lemieuxs' adjustable-rate mortgage loan and informs them of interest rate changes. And although the Lemieuxs quote in their complaint the notice's statement that it "is an attempt to collect a debt," they omit the language that immediately follows:

9

"However, if you have received a discharge of this debt in bankruptcy or are currently in a bankruptcy case, this notice is not intended as an attempt to collect a debt, and we have a security interest in the property and will only exercise our rights as against the property." Under these circumstances, I find that the notice of change in interest rate does not violate § 524(a)(2).

The third and final communication from ASC and Wells Fargo that the Lemieuxs claim runs afoul of the discharge injunction is a mailing with various documents related to hazard insurance coverage on the Groton property. The first document in the mailing is a three page letter from ASC, dated January 5, 2014. This is accompanied by a separate letter of the same date from Wells Fargo Insurance, a set of insurance declarations and a multi-page residential dwelling certificate. In its entirety, the hazard insurance mailing contains over a dozen pages.[4]

ASC's letter does include a bankruptcy disclaimer on page three which, in reduced typeface, states: "if you have received a discharge from bankruptcy, and the account was not reaffirmed in the bankruptcy case, Wells Fargo Bank, N.A. will only exercise its rights against the property and is not attempting any act to collect the discharged debt from you personally." As ASC appears to recognize by this disclaimer, any personal obligation of the Lemieuxs to pay debts related to insurance coverage, were, like obligations to make mortgage loan payments, discharged as a result of their bankruptcy. *See Whitaker v. Bank of Am. (In re Whitaker)*, No. 09-50301, 2013 Bankr. LEXIS 2328, at *31–32 (Bankr. E.D. Tenn. June 7, 2013) ("[A]ny liability of the Debtors to the Bank to pay for force-placed insurance that existed under the loan agreement or deed of trust was a prepetition debt that was discharged, regardless of when the

---

[4] These documents are attached as Exhibit E to the complaint. The insurance documents may be missing five additional pages, which appear to have been attached to Exhibit F.

10

Bank purchased the insurance.").[5] However, the balance of the twelve page insurance mailing sends a message that is at odds with the disclaimer. ASC's letter, which includes various demands for action and payment, opens with the admonition "Action required." The letter informs the Lemieuxs that ASC has obtained a hazard insurance policy because the Lemieuxs did not provide the "required" proof of adequate insurance on the Groton property. The letter demands certain action from the Lemieuxs, including that they "must" "giv[e] . . . proof of other acceptable coverage" if they want to "cancel the insurance [ASC] obtained." The Lemieuxs are "urge[d]" to do so, because otherwise "[t]he annual premium . . . will be charged to [their] escrow account." ASC warns the Lemieuxs that the coverage ASC "obtained will be far more expensive than a policy [the Lemieuxs] could obtain." As a result, ASC encourages the Lemieuxs to call them "as soon as possible and request that [ASC] pay the premium due," for which the Lemieuxs "would repay [ASC]." The tone of this strongly worded letter is strikingly different from the bankruptcy disclaimer on page three. *See In re Nordlund*, 494 B.R. at 518 ("In other words, [the creditor] is telling the debtors that it would collect the cost of replacement homeowner's insurance coverage from them, although such debts were discharged in their bankruptcy case.") In fact, the only reference to bankruptcy anywhere in the entire insurance mailing is in that single disclaimer, in a font size much smaller than the font size of the rest of the document.

---

[5] To be clear, the Bankruptcy Code "does not discharge the ongoing burdens of owning property." *In re Canning*, 706 F.3d at 68. But "the desirability of maintaining liability insurance for the premises" does not change the fact that, as a result of their discharges, the Lemieuxs have no obligation to obtain hazard insurance on the Gorton property and may choose not to do so. *See id.*

11

Unlike the monthly statements, the insurance mailing contains no additional disclaimers, explanations or other indications that it is being sent for informational purposes or that it is not an act to collect a debt from the Lemieuxs. *See id.* (explaining that a letter regarding replacement homeowner's insurances seeks to collect a debt from the debtors personally by "set[ting] in motion a process for the establishment and fixing of the debt owed"); *In re Gaston*, No. 09-00249, 2011 Bankr. LEXIS 1433, at *8 (Bankr. Haw. Apr. 14, 2011) (explaining that a creditor did not need to give insurance notices to a debtor to enforce its post-discharge lien on property).

Here, "[p]ractical effect is what counts," *Pollard*, 2014 U.S. App. LEXIS 17345, at *18, and, in light of the above, I find that the Lemieuxs have stated a plausible claim that the insurance mailing constitutes an act to collect a debt by ASC and Wells Fargo in violation of § 524(a)(2).

ASC and Wells Fargo argue that, even if sending the insurance mailing was an act to collect a debt in violation of § 524, they find safe harbor in § 524(j) of the Bankruptcy Code, which provides that:

> Subsection (a)(2) does not operate as an injunction against an act by a creditor that is the holder of a secured claim, if—
> (1) such creditor retains a security interest in real property that is the principal residence of the debtor;
> (2) such act is in the ordinary course of business between the creditor and the debtor; and
> (3) such act is limited to seeking or obtaining periodic payments associated with a valid security interest in lieu of pursuit of in rem relief to enforce the lien.

Section 524(j) is formulated in the conjunctive, providing refuge only if all three requirements are met: (i) the creditor must be secured by an interest in real property that is the debtor's principal residence, (ii) the creditor's act must be in the ordinary course of business between the creditor and the debtor and (iii) the act must be "limited" to seeking periodic

12

payments associated with a valid security interest, in lieu of enforcing the lien against the property itself. If any of these three hurdles is not cleared, the creditor remains subject to § 524(a)(2)'s discharge injunction.

Here, ASC and Wells Fargo stumble at the starting block. The Groton property had not been the Lemieuxs' principal residence for over a year by the time ASC and Wells Fargo sent the insurance mailing. *See In re Nordlund*, 494 B.R. at 521 (holding that creditor's written communications were not protected by § 524(j) because they were sent when debtor no longer resided at the real property in which the creditor had a secured interest).

ASC and Wells Fargo take the position that the point of reference for satisfying § 524(j) is the bankruptcy petition date and on that date the Groton property was the Lemieuxs' principal residence. A plain reading of § 524(j), however, does not support applying a bygone perspective to its interpretation. It is entirely a creature of the here and now. The statute deals with a creditor's post-discharge conduct and accordingly is drafted in the present tense, referring to a creditor who "is" the holder of a secured claim and who "retains" a security interest in property that "is" the debtor's principal residence. Reading § 524(j) through the prism of current events is consistent with its purpose, which is to permit certain post-discharge actions of a secured creditor, but only when the debtor remains in his or her home. *See Whitaker*, 2013 Bankr. LEXIS 2328, at *25–27 (explaining that § 524(j) codifies case law in which courts allowed creditors to send monthly statements to enable debtors to continue making payments on mortgage loans); *In re Steinberg*, 447 B.R. 355, 359 (Bankr. S.D. Fla. 2011) (stating that § 524(j) "recognizes [the] possibility" of a debtor declining to reaffirm the debtor's mortgage obligations but nonetheless making mortgage payments to an acquiescing secured creditor); Theodore O. Bartholow, III, Are

13

Post-Petition Loan-Modification Solicitations the Next Sears Cases?, 33 Am. Bankr. Inst. J. 44, 46 (2014) (concluding that "§ 524(j) is significant . . . only in instances where the debtor continues to use the property as his/her principal residence post-discharge. In all other instances, § 524(j) is inapplicable by its own terms."); Jean Braucher, Rash and Ride-Through Redux: The Terms for Holding on to Cars, Homes and Other Collateral Under the 2005 Act, 13 Am. Bankr. L. Rev. 457, 480 (2005) (suggesting that § 524(j) "contemplates continued payment by debtors on home loans after discharge of the debt, even when there is no reaffirmation"); *cf. Manning v. CitiMortgage, Inc. (In re Manning)*, 505 B.R. 383, 387 (Bankr. D.N.H. 2014) (holding that a creditor's post-discharge request that a debtor pay his mortgage loan and sign a reaffirmation agreement did not violate § 524(j) when the debtor wanted to keep his home and had already entered into two reaffirmation agreements after filing bankruptcy); *In re Sosa*, 443 B.R. 263, 268 (Bankr. D.R.I. 2011) (rejecting a creditor's "narrow interpretation" that § 524(j) permits creditors to send debtors "payment coupons" to provide account updates and noting the National Consumer Law Center's argument that § 524(j) "was intended to codify the so-called 'ride-through' option for distressed debtors who, *with creditor assent*, continue, post discharge, to pay their mortgages") (emphasis in original).

In *Bibolotti v. American Home Mortgages Servicing, Inc.*, No. 4:11-CV-472, 2013 U.S. Dist. LEXIS 69242 (E.D. Tex. May 15, 2013), the district court reasoned that:

> the exception in . . . § 524(j) makes sense [because it] would allow a secured creditor to remain in contact with a debtor who was living in the real property as his principal residence, send communications in the regular course of business, and explore the possibility of the debtor retaining his principal residence – i.e., collecting payments in lieu of foreclosure. However, for the debtor who no longer uses the real property as his principal residence . . . there is no need for the secured creditor to continue communicating with the debtor regarding retaining the property

14

Case 14-04042    Doc 24    Filed 11/18/14    Entered 11/18/14 16:09:54    Desc Main
Document      Page 15 of 16


or negotiating some type of modification in the ordinary course of business between the creditor and debtor.

*Bibolotti v. Am. Home Mort. Servicing, Inc.*, No. 4:11-CV-472, 2013 U.S. Dist. LEXIS 69242, *26–27 (E.D. Tex. May 15, 2013).[6] C*f. In re Nordlund*, 494 B.R. at 521 (determining debtor's principal residence as of the time the creditor's written communications were sent).

Having failed to meet the requirements of Bankruptcy Code § 524(j)(1), the safe harbor provided by that statute is unavailable to ASC and Wells Fargo with respect to their post-discharge demands in the insurance mailing.

---

[6] This rationale led the district court in *Bibolotti* to conclude that the temporal determination of the debtor's principal residence was the bankruptcy petition date. But the court was dealing with a debtor who had abandoned his principal residence *prior* to filing for bankruptcy and a creditor who contended that the date the loan agreement was entered into should control the determination of the debtor's principal residency.

15

IV.     Conclusion

For the reasons discussed above, the Lemieuxs have asserted a plausible claim against ASC and Wells Fargo with respect to the insurance mailing but not as to the monthly statements or the notice of change in interest rate. The motion to dismiss of ASC and Wells Fargo will be granted as to the claims arising out of their sending the monthly statements and notice of change in interest rate and denied as to the insurance mailing. A separate order shall issue.

At Worcester, Massachusetts this 18th day of November, 2014.

By the Court,

_____
Melvin S. Hoffman
U.S. Bankruptcy Judge

Counsel Appearing:   Robert F. Casey, Jr., Esq.
Robert F. Casey Jr., P.C.
Harvard, MA
for plaintiffs Denis P. Lemieux and Robin M. Lemieux

Peter J. Haley, Esq.
Sean R. Higgins, Esq.
Nelson Mullins Riley & Scarborough LLP
Boston, MA
for defendants America's Servicing Company and Wells Fargo Home Mortgage

16